**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

JULIETTA TERESA LANDEROS
2401 Calvert St NW, Apartment 813
Washington, DC 20008

   *Plaintiff,*

   v.

NATIONAL EDUCATION ASSOCIATION, INC.
1201 16th Street, N.W., Suite 410
Washington, D.C. 20036-3290

Serve: Kim Farrell
       1201 16th Street, N.W., Suite 410
       Washington, D.C. 20036,

   *Defendant*.

Civil Case No.: 20-0225

**COMPLAINT**

Plaintiff, Julietta Teresa Landeros, hereby brings suit against her former employer, the National Education Association ("NEA"), for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), District of Columbia Payment and Collection of Wages Law, DC Code §§ 32-1301 *et. seq.* ("DCPCWL") and the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1001 *et. seq.* ("DCMWRA"). Plaintiff alleges as follows:

**PARTIES**

1. Plaintiff is an adult resident of the District of Columbia and, at all relevant times, was employed by NEA as a Senior Organizing Data Specialist ("SODS"), Rank 7. She was employed by NEA in this capacity from August 14, 2018 until November 15, 2019, when NEA terminated her employment by discharging her. During her approximately 15 months of employment with NEA, it classified Plaintiff as exempt from the FLSA and the DCMWRA and paid her a fixed annual salary of $82,717.00.00. Plaintiff was an employee of NEA within the

meaning of the FLSA, DCPCWL and the DCMWRA, based on the statutory definitions of "employer." Also, at all times relevant to the Complaint, Plaintiff was employed within the District of Columbia within the meaning of D.C. Code § 32-1003 (b), because during that time-frame, she regularly spent more than 50% of her working time in the District of Columbia and/or because her employment was based in the District of Columbia and she regularly spent a substantial amount of her working time in the District of Columbia and not more than 50% of that time in any particular state. *Id*. Finally, Plaintiff was at all relevant times, engaged in commerce within the meaning of 29 U.S.C. § 207 (a)(1) because, she traveled outside of the District of Columbia to other states and she spent a significant amount of time working in those other states.

2. NEA is a labor union and a professional interest organization. Its headquarters are located in the District of Columbia and it is registered to do business in the District of Columbia as a non-profit entity. NEA was an "employer" of the Plaintiff within the meaning of the FLSA, the DCPCWL and the DCMWRA until her termination on November 15, 2019, because it hired her, it terminated her, it set the terms and conditions of her compensation, it directed her in her work and it maintained her employment records.

## JURISDICTION

3. Plaintiff is asserting causes of action under the FLSA, the DCPCWL and the DCMRWA.

4. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions and the Court has pendant jurisdiction over the Plaintiff's District of Columbia claims under 28 U.S.C. § 1367.

5. This Court has *in personam* jurisdiction over the NEA because it conducts business in the District of Columbia and/or because a substantial part of the events giving rise to these claims occurred in the District of Columbia.

## STATEMENT OF FACTS

6. During her employment with the NEA, Plaintiff worked anywhere between 37.5 and 65 hours per week, depending on her workload. And, although Plaintiff was classified by the NEA as exempt, she was in actually non-exempt because she did not perform, as a primary duty, functions which would have rendered her exempt.

7. The Collective Bargaining Agreement ("CBA") listed Plaintiff's position as FLSA-exempt and NEA misclassified Plaintiff's position as exempt. As a result of the misclassification, NEA paid Plaintiff a fixed annual salary of $82,717.00, regardless the number of hours she worked. Although NEA instructed the Plaintiff to record her time on an online system called "Ultipro", it did not pay Plaintiff an overtime premium for overtime hours worked or reported. In fact, NEA failed in its statutory obligations D.C. Code § 32-1008 (c) to notify Plaintiff that she was entitled to overtime pay and the rate of pay and to identify the precise exemption it was claiming. *Id*. NEA only provided Plaintiff with one hour of compensatory time for some hours of overtime work. And typically, Plaintiff did not record more than 40 hours of work in a work week because she knew she would never use the compensatory time awarded to her and that any compensatory time that had been earned but was not used at the time of her separation was not paid to her. However, at all relevant times, Plaintiff's two first-line supervisors had actual and/or constructive knowledge that Plaintiff was working more than 40 hours in a work week.

8. Throughout her employment at the NEA, Plaintiff primarily performed non-exempt functions.

9. As a SODS, one of Plaintiff's principal duties was to train state affiliate organizations on use of the NEA's database. However, Plaintiff did not develop the training content or methods, as Plaintiff used the training manual which had drafted by another employee and she relied on training received from other NEA staff and rules established by the NEA for database use. The training activities Plaintiff did not involve the exercise of discretion or independent judgment nor complex concepts or high-level or technical expertise or advanced knowledge. The NEA database contains information for nationwide NEA-contact with union members and a user can sort the data by geographic location. Plaintiff normally conducted a training of state-affiliate organizations that lasted 1 to 2 hours, prepared for the trainings and conducted post-training question and answer sessions and coaching sessions.

10. Plaintiff often conducted her trainings through video conferencing using Adobe conference call or Google Hangouts so that she could communicate visually with out-of-state affiliate organizations. In some instances, Plaintiff traveled to other state affiliate organizations to perform training functions in person. For example, Plaintiff travelled to the following locations during the following dates: Oregon from August 22 to 24, 2018 (three days); Arkansas from October 18 to 21, 2018 (four days); Oregon from November 6 to 8, 2018 (three days); Louisiana from November 26 to 28, 2018 (three days); Louisiana from January 24 to 27, 2019 (four days); Arkansas from March 7 to 9, 2019 (three days); North Carolina from April 29 to May 2, 2019 (four days); Georgia from May 7 to 8, 2019 (two days); Alabama from July 7 to 11, 2019 (five days); and Alabama from July 21 to 26, 2019 (six days). This was a total of 37 days of interstate travel over the course of Plaintiff's 15 months of employment, an average of

approximately 2.5 days of travel per month.

11.     Plaintiff also worked with senior staff at NEA headquarters to show them how to retrieve various reports form the database. She also created maps and charts using information from NEA's database for individual state affiliates or for other departments at NEA headquarters and showed them how to collect the data. This was a very minor part of her job duties and consumed only a small percentage of her time.

12.     Finally, from January 2019 until sometime September, 2019, Plaintiff was assisted with NEA's establishment of a data tunnel (Application Program Interface ("API")), which was a project involving NEA's state affiliates and certain departments at NEA headquarters. The objective of the project was to facilitate a data exchange between the NEA's database and the texting tool called "Hustle", which was used by the state affiliates and by personnel at NEA headquarters. Plaintiff also trained affiliates and headquarters personnel on how to use the API.

13.     Under the collective bargaining agreement, Plaintiff and NEA agreed that Plaintiff was entitled to certain benefits. One of the terms of the collective bargaining agreement was that Plaintiff would accrue annual leave and upon separation from employment with NEA, Plaintiff was entitled to a pay-out for the balance of accrued but unused annual leave.

14.     Plaintiff's salary and leave benefits were wages within the meaning of D.C. Code § 32-1301 (3) because they constitute: "all monetary compensation after lawful deductions, owed by [Defendant] . . . whether the amount is determined on a time, task, piece, commission or other basis of calculation." *Id.* And, specifically, the salary and leave benefits are "Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; or (iii) Pursuant to District of Federal Law."

## COUNT I
## VIOLATIONS OF THE FLSA

15. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

16. Plaintiff was engaged in commerce within the meaning of the FLSA because she regularly interfaced by video conferencing with out-of-state affiliate organizations traveled to other states for work and spent substantial working time in those other states.

17. NEA violated the FLSA by misclassifying Plaintiff as exempt and failing to pay her an overtime premium for her overtime hours – *i.e.* one and one-half times her regular hourly rate for each hour over 40 that she worked during each workweek she was employed.

18. NEA is liable to Plaintiff under 29 U.S.C. § 216(b) of the FLSA, for her unpaid overtime premium compensation, plus an additional equal amount as liquidated damages, court costs and reasonable attorneys' fees calculated at Legal Services Index LSI Matrix ("LSI Laffey Matrix") rates, *see D.L v. District of Columbia*, 924 F.3d 585, 593-94 (D.C. Cir. 2019).

19. The precise amount owed to the Plaintiff cannot be calculated at this time without discovery because Plaintiff and her counsel do not possess all electronic records that would be needed to estimate the number of hours of overtime that she worked, including but not limited to Plaintiff's electronic calendar, email, other electronic correspondence and travel records.

## COUNT II
## VIOLATIONS OF THE DCMWRA

20. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

21. At all times relevant to the Complaint, Plaintiff was and "employee" of the NEA within the meaning of D.C. Code § 32-1002 (2).

22. At all times relevant to the Complaint, NEA was an "employer" of Plaintiff within the meaning of D.C. Code § 32-1002 (3).

23. NEA violated the DCMWRA by misclassifying Plaintiff as exempt and failing to pay her an overtime premium for the overtime hours she worked during her employment with NEA.

24. As a result of the violations of the DCMWRA by the NEA, it is liable for Plaintiff's unpaid overtime premium, liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the LSI Laffey Matrix rate, as required by D.C. Code § 32-1308 (b)(1).

25. The precise amount owed to the Plaintiff cannot be calculated at this time without discovery because Plaintiff and her counsel do not possess all electronic regards that would be needed to estimate the number of hours of overtime, including but not limited to Plaintiff's electronic calendar, email, other electronic correspondence and travel records.

## COUNT III
## VIOLATIONS OF THE DCPCWL

26. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

27. At all relevant times, NEA was an "employer" of Plaintiff within the meaning of the DCPCWL.

28. At all relevant times, Plaintiff was an "employee" of NEA within the meaning of the DCPCWL.

29. At all relevant times, Plaintiff's salary and leave benefits, including the right to be paid for accrued but unused leave at the termination of Plaintiff's employment, were wages within the meaning of D.C. Code § 32-1301 (3).

30. NEA discharged Plaintiff on Friday, November 15, 2019. At that time, NEA owed Plaintiff her last paycheck (a gross value of $3,293.73) and the value of her 54 hours of accrued but unused annual leave (a gross value of $2,371.49). NEA paid both Plaintiff's accrued but unused leave and her final salary-based payment late, resulting in liability for liquidated damages. Under D.C. Code § 32-1303 (1), NEA was required to have paid Plaintiff for all wages earned on the working day following her November 15 discharge – no later than Monday November 18, 2019. Since NEA failed to pay these wages on time, it is liable for liquidated damages "equal to 10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller." *Id*. § 32-1303 (4). NEA directed-deposited Plaintiff's last salary pay check in her account on Thursday, November 21, 2019, making it three days late (liquidated damages of 30% or $988.12). And, on December 6, 2019, NEA delivered (via certified mail, return receipt requested) Plaintiff's annual leave pay-out check to the apartment complex where Plaintiff lived, making it 14 days late (liquidated damages of 140% or $3,320.86).

31. As a result of the violations of the DCPCWL by the NEA, it is liable for liquidated damages in the amount of $4,308.98 and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the LSI Laffey Matrix rate, as required by D.C. Code § 32-1308 (b)(1).

**RELIEF REQUESTED**

This Court should enter judgment for Plaintiff and against the NEA in the amounts specified below:

a. enter a judgment against NEA and in favor of Plaintiff, based on its violations of the FLSA, in the amount of Plaintiff's unpaid overtime wages, plus an amount equal to her unpaid overtime wages as liquidated damages;

b. enter a judgment against NEA and in favor of Plaintiff, based on its violations of the DCMWRA, in the amount of Plaintiff's unpaid overtime wages, plus an amount equal to three times her unpaid overtime wages as liquidated damages;

c. enter judgment against the NEA and in favor of Plaintiff for liquidated damages in the amount of $4,308.98, based on the DCPCWL;

d. award reasonable attorneys' fees and costs incurred in this action, including fees at the LSI Laffey Matrix rate.

Respectfully submitted,

/s/Omar Vincent Melehy
Omar Vincent Melehy
DC Bar No.: 415849
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
ovmelehy@melehylaw.com
Phone:  (301) 587-6364
Fax:    (301) 587-6308
*Attorneys for Plaintiff*